We'll call the next case James Doe v. Mercy Catholic Medical Center. Mr. Bouillant. May it please the court, Your Honor. Good afternoon. So this case is a case brought under Title VII in which the district court ruled that a medical... You mean Title IX. Title IX. Title IX, of course. I was going to say... Title IX. It's under Title VII. We're done now. Yeah, Title IX. We did not bring it under Title VII because Mr. Neustadl was a medical resident, and a medical resident is a student. Medical residency is the terminal part of a medical education in America. It's the way that we educate specialist doctors. It's the only way that we educate specialist doctors. Counselor, you ask us to take account of what's on the medical center's website and the references to an educational program. Where does that appear in the district court record, and how is it something we can take judicial notice of? I believe the website was referenced in our motion to dismiss as an exhibit. But regardless of whether that is the case, that was in our amended complaint. Judge Bayleson asked us to add facts that would show that a medical residency is educational, and from there we added that fact along with many others. Medical residency is accredited by... All right, Mr. Boyette, before we get started, and we already did, do you want to request any time for rebuttal? Yeah, I do, Your Honor. How much is that? Three minutes. Okay, you're down to seven minutes now. Okay. So graduate medical education, it's what it's called. It's accredited by the ACGME. It's funded by Medicare through a funding that's called graduate medical education. Everybody calls it graduate medical education. Why is that? Because this is how the medical profession has decided to educate specialists. And I think there's good reasons for that. You wouldn't want a specialist who didn't have substantial clinical training. That's all great, but what's 20 U.S.C. 1681 call it? 1681 and 1687. So why don't you talk about the statutes? So the statute bans 1681 is the basic Title IX prohibition, and it bans discrimination on the basis of sex in any education program or activity receiving federal financial assistance. Under 1681, there's a number of exceptions that Congress has excluded from coverage of sex discrimination education, and that includes both educational institutions and non-educational institutions. After the Grove City case, Congress jumped back in with the Civil Rights Restoration Act, which is in Section 1687, correct? Absolutely. I'm sorry. Tell us how that applies. 1687 restored program-wide coverage under the Act or established it. It's unclear whether the Supreme Court was wrong. What do we make of the language all? Aren't you asking us to rephrase the statute to say any instead of all? No. 1687 applies to any program or activity, and it restores. The issue in Grove City is the funding that goes straight to a program. Does that establish institution-wide coverage, or does it mean that you can only get the coverage within the program at issue? 1687 very explicitly says that there are state entities covered, there are schools covered, and then there are private corporations covered, and depending on the type of private corporation, you will have different types of institution-wide coverage. So for an educational institution, it's the entire thing. For a public interest organization, if you get any funding, then your entire operations are covered under Title IX. However, and there's a third type of private corporation that could have any business purpose whatsoever, a private business that has no public interest component, and that is also covered by Title IX under Section 1687. This is the term program or activity and program mean all of the operations. So would you take that to mean we're talking on an institution-wide basis? I take it your adversary's argument is that under 1681, then education modifies that rather than some unit or department of the institution. You, I thought, were countering that by saying that it doesn't mean institution, it means component parts. How can we glean that from the language of 1687? 1687 establishes institution-wide coverage. Title VII's education limit says that only educational programs, that's another element that you have to prove that the issue is educational, that the program or activity that you're being discriminated in is educational. 1687, all 1687 does, it says that the federal funding does not directly have to go to the educational program at issue. That was the purpose of 1687. It did not expand or limit the scope of institutions covered by Title IX. Doesn't it say in 1687A or 3AII that it only applies to an entity which is principally engaged in the business of providing education? Well, it says education and health care. Principally, principally. 3A, 3AII? 3AII. Yeah, so it says. Isn't Mercy principally involved in providing health care? Well, 3AII says an entire corporation, partnership, or private organization, which is principally engaged in the business of providing education, health care, housing, social services, or parks or recreation. That's what the statute says. So, yeah, now Mercy in their brief says that's not what the standard is. They do a bracket and put a period in. So, Mercy would have us delete that entire second section of 3AII and the entire second section of 3B, which says any other private business. They do bracket that, but in order to get to your interpretation, aren't you adding the word education in front of operations? Well, in Title IX, Title IX, 1681, it says educational program or activity. So what does that mean? How are these two statutes, these two provisions of the same statute, reconciled? The legislative history says this is how it's reconciled, is that for a hospital it's only their educational activities. Let's assume for a second, for purposes of this argument, that we hold that Title IX does apply to residency programs like the one that your client was a participant in. I'd like to ask you a little bit about the private cause of action that is necessary. And if you would, would you tell me what you think the implication of the Jackson case, or what impact the Jackson case has to our determination as to how broad the private cause of action is? Jackson v. I'm sorry, what's the full state of Jackson? You're not familiar with Jackson v. Birmingham? I'm not, Your Honor. You're not? But I am familiar with the Supreme Court's rulings on private rights of action. So maybe I'm just blanking on the name of the case. But the Supreme Court has recognized a private right of action, Title IX. They've also recognized a private right to damages. For retaliation. That case, the one about retaliation for a Title IX thing. Yes. So in that case, it's... And I'm sorry, is that a Supreme Court case, Your Honor? Jackson v. Birmingham. So that case suggested that, yes, there had to be a retaliation claim under Title IX for someone, because otherwise it was a coach. I believe Jackson was a basketball coach. Yeah, Jackson was a basketball coach. And if he couldn't bring the retaliation for him complaining about a Title IX violation, there'd be no remedy. That may suggest that a pure employee might not have a cause of action. But here we have a student-employee hybrid. And so I think all the cases about employees are just, it's just not, if I may take another moment, it's just not the same issue here. So banning a student-employee hybrid from recovering under Title IX would extend to graduate students, it would extend to work-study students. The question is not, my question is not so much, I'm surprised you didn't know Jackson by name, but you knew it by content. But secondly, there's a real question here. You missed your Title VII claim here.  But the question here is whether or not a person in your client's position is required by Congress to proceed under Title VII. Yes, and there's nothing explicit in the statutes that say either of that. There isn't, but, I mean, there's a lot out there on private causes of action. There is, and the Supreme Court has recognized a Title IX cause of action. In North Haven, they recognized an employment cause of action, though it wasn't a private cause of action, it was an employment cause of action, though it was predicated. But those were for, quote, students. Well, North Haven was the case involving the employment regulations, and those were predicated. The underlying complaint in North Haven was a faculty employee filing a complaint with the Department of Health and Human Services. Yeah, but Canna was a student. Canna was a student. Okay, Canna was a student. Franklin. Franklin was a student. You have to combine those two cases with North Haven to recognize that even a faculty member would probably have a private right of action under Title IX. That is not our case, but North Haven suggested that absolutely Title IX's regulation extends to employees, and it permits administrative complaints to the agencies from a faculty member. Where does it say that you have a private cause of action for sexual harassment as an employee? Which case allows that? That it does not. That case has not yet been decided by the Supreme Court. Has not been decided, nor by us, correct? So you're asking us to take two pretty big jumps here. One, to apply Title IX to graduate residency programs, and two, to find a private cause of action. We think it would be a very large jump to not take those actions as well. Okay. I just want to be clear that that's what you're doing. It is a matter of first impression. It's very important, Your Honor. Okay. Thank you. Can I ask about a third jump? We also have to then tie the alleged sexual harassment into the dropping from the program, because that's the only act that occurred within the two years. And that, to me, looks like classic retaliation. Well, yes, Your Honor. And we have a retaliation claim as well. We have a wrongful termination retaliation indistinct claim. But we also wish to allege the harassment claim. We believe that the comments that were made during that and afterwards are separate and distinct from the adverse action. But we recognize that that's not our only claim under Title IX. So you could decide that, but we still need the Title IX coverage for our retaliation claim. All right. Thank you, Mr. Boyer. We'll have you back on rebuttal, and we'll call you now on Ms. Monta. Ms. Monta? Or is that a Monta? Monta. Monta. Monta. Okay. May it please the Court. Christine Monta for the United States. This is Amicus Curiae. Just a couple points that I want to address in my brief time today. First, whether or not this Court holds that plaintiff had a private cause of action under Title IX, which we think it should, and I'll address shortly. I just want to make clear that that question is distinct from and shouldn't affect this Court's decision on whether medical residency is covered by Title IX. On that question, the plain language of the statute, as well as the regulations issued by the agencies that administer Title IX and their interpretation of those regulations, leave no doubt that medical residency is an education program or activity within the broad language of the statute. We think it's important for this Court to provide guidance on that question and clarify it so that hospitals understand that when they accept federal funds, that they are taking on an obligation to comply with Title IX's anti-discrimination provision. Is there anyone else besides your brief, to the extent you're asking us to record our deference, that there's the equation of medical residency programs with occupational training? There hasn't been a public statement by the Department of Health and Human Services prior to our brief. Of course, under our versus Robyn's, the Amicus brief itself merits deference. I would note, though, that every hospital in the country that receives Medicare payments through the Medicare program is required to sign an attestation of compliance that acknowledges that they are bound by the five civil rights statutes that are tied to federal financial assistance, including Title IX, and that they agree to comply with them. So that statement exists, and hospitals understand that. As to the private right of action question, it's the position of the United States that reading the three cases together, Cannon, Franklin, and North Haven, there really can be no other conclusion but that Title IX provides a private cause of action for employees of educational programs or activities. Cannon tells us that there is a private cause of action under Title IX, which Franklin tells us includes the remedy of damages, and North Haven tells us that employees are covered by Title IX. They're among the persons that Title IX protects. So there's simply no reason to conclude that the right and remedy that Cannon and Franklin established would not extend to the persons that North Haven recognized or would somehow be limited. You said there's no reason for that. Before you had Title IX, you had Title VII. And the Congress, certainly in 1984, or 87, when they enacted the Civil Rights Restoration Act, was well aware, 1987, was well aware of Title VII. And there's a lengthy administrative procedure. There's a much shorter time period. There's mediation. There are various remedies under Title VII for employees to file these kinds of claims. And isn't it reasonable to assume that this is a statutory remedy that Congress wanted employees to follow? I don't think so for a few reasons. First of all, Your Honor's reference to 1687 I think is important because by the time 1687 was enacted, Cannon had already been decided and North Haven had already been decided. If Congress at that point wanted to make clear that employees in education programs did not get the right remedy, they could have added that into the statute, and they had an opportunity to do that. Can you speak to the significance of Johnson v. Railway Express Agency or Brown v. GSA to the interaction between Title VII and Title IX? This is outside your brief, I realize, but if you're familiar with those cases, maybe you could address that. I'm not. I apologize. If Your Honor could give me context, I don't recall those cases. Well, Johnson says that Title VII doesn't deprive an aggrieved individual of other remedies, and Brown v. GSA has a Supreme Court holding that Title VII preempts parallel remedies for discrimination only in the context of federal employees, not in the private context. Oh, I believe that. I don't recall that case. I'm sorry. I was thinking that it was a different case. All right. How about let's see if you recall Lekoski v. James. As far as you're suggesting, we would be at odds with the Fifth Circuit's interpretation of the private right of action. That's true, Your Honor. This Court would be. But as Your Honor knows, the United States doesn't agree with the conclusion in Lekoski. And Lekoski's reading of the three cases that I mentioned earlier, I mean, essentially Lekoski's reading was, well, those cases didn't explicitly address this question, yes. We acknowledge that Cannon, Northaven, and Franklin didn't explicitly address this question, but we think that you have to read those cases together, and to somehow limit the cause of action that Cannon recognized would be to add a judicial gloss onto the statute that wasn't intended by Congress. Okay. All right. Thank you very much, Ms. Martha. And Ms. Nagel? Yes. Thank you. May it please the Court. My name is Robin Locke-Nagel, and I represent the Appellee Mercy Catholic Medical Center. Your Honor, the lower court properly dismissed those Title IX claims in their entirety, because as an employee of Mercy Catholic, the hospital, those recourse was under Title VII, and she opted not to pursue a Title VII remedy, and therefore she has no claim under Title IX. How do we square that with the Supreme Court's holdings in Johnson and Brown? Well, could I start with the other Supreme Court cases, and then I'll address those, because they are not in our briefs and I'm not as familiar with them. But I do want to point out that while the government relies on Cannon, Franklin v. Gwinnett, and North Haven, they neglect to mention what has become a critical interpretive U.S. Supreme Court case in the Title IX context, and that's Gebser v. La Vista School District. And in that case, Justice O'Connor stated very clearly that implied rights of action, as we have under Title IX, are not to be read expansively, in particular where they might bump up against other federal statutory schemes. And Gebser is completely in line with another long line of Supreme Court cases under 1983, which likewise say where you have a comprehensive statutory remedial scheme, and on one hand you have 1983, which is undefined. On the other hand, the comprehensive statutory remedial scheme preempts the undefined claim, and I would submit that that's precisely what we have in this case. We have Title VII, which provides an explicit remedial scheme before the EEOC. It has filing deadlines. It has explicit statutory damages remedies. It comprehensively occupies the field for employees. And on the other hand, you have what I would suggest is a narrow remedy recognized by Cannon initially. And what is interesting in Cannon is that there were majority, concurring, and dissenting opinions, and each and every one commented that where Congress creates rights, it is better left to Congress to if Congress wants private rights, it is better if Congress expresses those explicitly. Well, we also have Jackson. Okay. Jackson v. Birmingham. Yes, sir, and I'm glad you raised that. And I, Judge Crousey, will get back to the other two cases. Jackson is an interesting case because in that case, the coach had complained of sex discrimination on the women's athletic program, and he himself could not file under an employment claim because he had not experienced employment discrimination based on his sex. So in that claim, without any remedy, the Supreme Court says we will recognize and we will expand the private remedy under Title IX to give him recourse where it would not otherwise exist. Isn't that remarkably similar to what happened here to Jane Doe, who was thrown out of the residency program by your client? No, the distinction here is that Jane Doe had a remedy, a clear and undisputed remedy under Title VII, which she made a conscious choice not to pursue. Now, she argues that, well, because it was a residency, there were issues related to my education and the furtherance of my education that I couldn't have that, you know, led me to delay filing under EEOC or I wouldn't have been able to fully litigate in a Title VII claim. But respectfully, we disagree with that. Whatever limitations on her educational horizons being terminated from the residency program... Okay, so you say that the distinction... I understand your distinction you're making between Jackson and Jane Doe. I understand that, and that applies to the private cause of action and, of course, that applies to the ultimate remedy that Doe may have here. But it doesn't necessarily answer the question of whether Title IX applies to a hospital like yours that has a graduate residency program that it operates in. Also, it operates in affiliation with Drexel, which is clearly an educational institution under Title IX. That is correct, sir, and, of course, Drexel is not a defendant in this action. We understand that. Doe only sued her employer, Mercy Catholic Medical Center. But, yes, it is our position that a private hospital that employs residents and trains them during the course of their employment is not an education program or activity within the meaning of Title IX. The statute is clear. It regulates education programs and activities. The term program or activity is defined in Section 1687, which is the CRRA, the Civil Rights Restoration Act. And it's defined broadly, not only under Title IX, but under three other civil rights statutes. Congress basically went across the board and said, as to all four of these statutes, we are going to define this. It was in reaction to the Grove City case. We're going to define program and activity in this way. And so in Title VI, in Title IX, in 504 of the Rehabilitation Act, and in the Age Discrimination Employment Act, identical definition. But, Doe, we have a minimum ambiguity. I mean, the term all can be plainly read to mean each and every. And that would make a lot more sense. It's talking about operations of and then listing entire entities that follow. In light of that, I mean, if at first we've got ambiguity here, why doesn't Chevron deference as to coverage of an occupational training program and one that has been defined to include medical residency programs in an amicus brief, which invokes our deference, why doesn't that just positively answer the question about coverage under Title IX? Well, you've asked a number of questions. First of all, all of the operations was adopted explicitly in response to Grove City. And the issue in Grove City was, are we talking about the entire institution which was educational, by the way, or are we talking about the program or activity that received federal funding? And U.S. Supreme Court said, we're only talking about the individual program or activity. Congress said, no, we're talking about all the operations. But when they adopted that definition, they had several different categories of defendants to which it would apply. And the only one that could arguably apply to Mercy is the one that says, a private entity principally engaged in the business of, and then it has a string of education, hospital, social services, parks and recreation, and so forth. But when you add the modifier education to the definition of program or activity, we submit that it is clear that it could only rationally mean all of the operations of an entity principally engaged in the business of education. As to deference, what about the entities that are specifically covered in 1687 that are principally engaged in other businesses, like principally engaged in providing health care? That is as to the definition of program or activity, which is concededly broader than the definition of education program or activity. Unless, again, each and every. Each and every operation of. I'm not sure I follow the logic of that. But let me address the deference. I mean, I understand that you're positing that there is ambiguity in the statute, and I accept that for purposes of argument. As to deference, the HHS and the Department of Education, which of course are the entities who are charged with implementing the statutory scheme that was created by Congress, have never in their regulations said that this applies to medical residency programs. They've said it applies to occupational training, and they've said now in an amicus brief to which we owe our deference. Again, they're construing their own regulation. So that's significant deference we need to give to their amicus brief, saying medical residencies are covered by occupational training. May I address that? First of all, the occupational training was the type of program or activity. If you read the regulation at issue, and I'm just talking about the regulations now, not the briefing. If you look at the regulation, it says research, occupational training, or other program or activity. It links back to the definition. So it's talking about subject matter, but the entity is defined as an entity that is principally engaged in education. We submit that an agency regulations, and again they're interpreting regulations that don't squarely say what they say they say, which is it applies to medical residency, but where the interpretation departs from the underlying statutory underpinnings. It is not entitled to Chevron or our deference. And again, I just want to point out that this is the Department of Justice, along with Department of Education and HHS, arguing about private rights of action. We're not here because HHS is saying we want to be able to enforce our regulations. That's not what this case is about. This case is about those agencies saying we want you to recognize that a private plaintiff can sue a medical residency program. And I think that the litigation position expressed in that context is accorded less weight than if the agency itself were here saying we have actually been actively regulating or want to be actively regulating these programs ourselves, and we believe the regulations permit us to do that. Let me ask you another question. Let's suppose that Jane Doe were here in the same position that Cannon was when Cannon sued because a medical school denied her admission because of her sex. Let's suppose Jane Doe brought an action against your client saying that she was denied admission to the graduate residency program because of her sex. Would you be here arguing the same way that Title IX does not apply to that controversy? Well, what she could, yes, to the extent that she could sue Mercy under Title VII for discriminating against her on the basis of her sex by not entering into an employment contract with her for residency. And that's the precise issue. And I would say that that cause of action would be under Title VII. It would not be under Title IX. Okay. And your theory would be then that the male medical school is not covered by Title IX. No, a medical school is. But its principal business of male clinics is not to run medical schools, it's to provide medical services. No, so there's a difference between a medical school and a graduate and what I would call an academic medical center. And arguably, for instance, two of the cases that Doe relies on, Lipset versus University of Puerto Rico. I mean, male is a little bit out of, most medical schools are affiliated with universities. I'm positing one that's a little bit outside the realm because male is not affiliated with the university. It's not an educational institution. It's a medical hospital that runs a medical school. And there may be others like that, but I don't know of any that are private medical facilities. And to the extent that male operates a medical school, and it may be through a subsidiary, I'm not exactly sure, but certainly the medical school itself is under Title IX. That was established by Canon. There's no dispute about that. What we are talking about is a private hospital, and I think that the closer case perhaps raised by your hypothetical would be the Mayo Clinic as a hospital, which employs residents who have graduated from Mayo Clinic, the medical school. I would argue and submit that that would not be covered under Title IX because it's covered under Title VII, but that's a closer case. Our case is even beyond that because it's simply a community hospital that employs residents and clearly has an educational component or a training component to the resident experience, but it's defined by the employment contract. And these residents are hired to see and treat patients. Eighty percent of their time is exercising independent clinical judgment, not under any supervision. They're not in a classroom. They are providing services, valuable needed services, to the community who comes into the hospital to get health care. Why don't these remedies coexist? And I'm not sure talking about whether there's a private right of action for employees can really be conflated with the issue of Title VII preemption. But wasn't this a very similar argument actually raised in Warhaven? And the majority rejected the position that's set forth in the dissent there, saying that extending Title IX to employment discrimination would disrupt Title VII's carefully prescribed procedures. The dissent took that position. The majority did not. And in recognizing that there was a reach to employees when you combine that with other Supreme Court case law on the existence of a private right of action in Johnson and Brown, which seemed to suggest that you can have parallel remedies of Title VII and 1981, 1983 remedies, for example, at least in the private sector, how could we say in light of that Supreme Court case law that there's not a private right of action under Title IX that exists in parallel for employees? A couple of points. First of all, as to the Supreme Court, I do believe it's evolved, and I believe that the Gebser decision, which was subsequent to those three initial decisions, does express the concern about implying rights of action well beyond their clear statutory underpinnings. That's number one. But I'd like to give a couple of examples from this case as to why I think that it's inappropriate and why the courts are hesitant to expand implied rights. So Doe is alleging sexual harassment as one of her claims of sex discrimination. Where does she get that? She gets that from Title VII. That was the Meritor case back in the 1980s, under Title VII, a female can sue for sexual harassment as a form of sex discrimination. So she's borrowing from Title VII. Secondly, in her statute of limitations argument as to count one, she argues, I should be entitled to invoke the equitable doctrine of continuing violation to get around the statute of limitations, bar to my adverse, my hostile environment claim. She's borrowing from Title VII. She wants the benefits of Title VII without the restrictions. Title VII is a comprehensive remedial scheme. It has filing deadlines. It has an administrative process. It has specific damage remedies. And the danger of permitting a plaintiff on a case-by-case basis to come in and argue for expansion of rights is that you don't have, you know, you don't have the checks and the checks and balances. You don't have the limitations. And the danger is expanding rights untethered to statutory framework. It's not an expansion. It's not in the statute. And part of the Supreme Court's reasoning with expanding Title IX to employees at all was that the term person was covering employees as well as students and others in an educational environment. How, again, was the statutory basis for drawing a distinction between which of those class of persons can bring a private right of action? I believe, again, what Justice O'Connor suggested in Gebzer and what was followed in Lukoski v. James and by very many cases following that was that it's not a matter of labels. You have to do a functional analysis. You have to see this claim in the context of the Title VI, the Title VII, and all of the other remedies that are available to plaintiffs. And, you know, Cannon opened the door to sex discrimination claims, but I would submit what Doe was trying to do was to drive a Mack truck through that and not look at this as a nuanced analysis that asks, okay, Congress didn't create this right of action. We, the courts, created this right of action. How do we interpret it in a way that is consistent with the statutory framework and the administrative framework that exists around it? And I would submit that. Thank you very much. Your time is up. Thank you. Thank you. We'll hear back on rebuttal from Mr. Boyett. Thank you, Aaron. So I'd like to address the private right of action issue. So Lukoski says no, but there's Second Circuit cases that say yes. Weinstock from 2000, Murray from 1995, Lipset from the First Circuit in 1988. And opposing counsel has suggested we're trying to drive a Mack truck through Title VII or Title IX jurisprudence. We are not. This court could distinguish Lukoski. Lukoski does not need to govern this because we are not representing James Rowe, the faculty supervisor who was supervising Ms. Doe. We are representing a student in this program. A student who happens to be an employee. A student who is also an employee just like a work-study student or a graduate student who teaches a substantial amount of classes. I would say if a graduate student at a university who teaches a substantial amount of classes, does a substantial amount of independent research, publishes, is not covered by Title IX, then a medical resident shouldn't be either. But if Title IX, there is nothing in Title IX that suggests that it's coverage. You're not saying that Doe is not covered by Title VII, are you? No, we're not arguing that. Okay. And, you know, counsel has talked about the benefits of Title VII versus Title IX or Title IX versus Title VII. There are limitations to Title IX. She will have to prove something far different in order to prove sexual harassment under Title IX than under Title VII. She will have to prove that Mercy had actual knowledge and deliberate indifference to her complaints. And, you know, so it's not all benefits or burdens. It's a different statute with different requirements. And, you know, because of that different burden of proving, it's federal funding. That's the reason for that under GEPSR. You know, she doesn't have to go to the EUC. And why should she? The EUC is not trained to investigate education discrimination. Her complaints are about education discrimination in the workplace. You can't say that the EUC is not trained to investigate a case like this. The issues in this case are educational. He failed to write me a letter of recommendation. He was talking on the phone to the next program, and he didn't give me the, you know, he blacklisted me instead of giving me a positive thing. You know, the issues there. And I lost my job. I lost my job. And because of that, I lost my educational opportunity. She doesn't care about that. Which was a job. I lost some of the money I was getting per year. The $52,000 a year for a doctor working 80 hours is a living stipend, but is it a salary that a doctor would take? She makes more money right now. She is not claiming that this is a lack of educational employment opportunities. And because it's educational, it's very important that Title IX extends to this in order to prevent discrimination in education. Title VII doesn't cut muster. The 180 days is not the appropriate statute of limitation for an educational discrimination claim. And if she was a pure student, that would be very clear. And the student-employee hybrid shouldn't change that analysis. Thank you. Okay. Thank you, Mr. Boyan. We thank counsel for their argument and briefs on a very interesting and important case, and we'll take this matter under review.